IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**VERLYNIN BUCKLEY**                                                                                     **PLAINTIFF**
**ADC #147514**

v.                              Case No. 4:21-cv-00666-LPR

**JOHNATHAN FALLIS, Deputy,**
**Star City Police Department**                                                                          **DEFENDANT**

## ORDER

Pending before the Court is a Motion for Partial Summary Judgment filed by Defendant Johnathan Fallis.[1] Officer Fallis is a police officer with the Star City Police Department.[2] He is being sued in his personal capacity under 42 U.S.C. § 1983 by Plaintiff Verlynin Buckley.[3] As relevant to the instant Motion, Mr. Buckley claims that Officer Fallis conducted an unconstitutional search of Mr. Buckley's truck.[4] For the reasons discussed below, the Court GRANTS summary judgment on this claim to Officer Fallis.

### I.    BACKGROUND FACTS

When evaluating a defendant's motion for summary judgment, the Court must read the record in a very particular way. If a fact is undisputed—or not genuinely disputed—the Court adopts it.[5] If a fact is genuinely disputed (and material), the Court adopts the most pro-plaintiff

---

[1] Def.'s Mot. for Partial Summ. J. (Doc. 73).

[2] Statement of Facts (Doc. 75) at 1; Am. Compl. (Doc. 7) at 1.

[3] *See generally* Am. Compl. (Doc. 7) (attempting to state both personal-capacity and official-capacity § 1983 claims against Officer Fallis); Order (Doc. 9) (dismissing official-capacity claims at the IFP screening stage).

[4] *See* Am. Compl. (Doc 7) at 4–5. Officer Fallis did not move for summary judgment on Mr. Buckley's personal-capacity excessive force claim. *See* Br. in Supp. of Def.'s Mot. for Partial Summ. J. (Doc. 74) at 2. That claim will proceed to trial. The Court notes that Mr. Buckley has not, at any time in this case, requested the appointment of *pro bono* counsel. Since we are moving toward trial on at least one claim, however, the Court wonders whether Mr. Buckley would like the Court to appoint counsel for him. If Mr. Buckley wishes for that to occur, Mr. Buckley should file a short document with the Court explaining that he agrees to the appointment of counsel in this case.

[5] *See Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022).

1

version of the fact that a reasonable jury could find to have occurred.[6]  Then, the Court draws all reasonable inferences from the adopted "facts" in favor of the plaintiff.[7]  Essentially, the Court constructs the most pro-plaintiff version of the record that a reasonable jury could possibly countenance.[8]  Then, considering that version of the record, the Court analyzes whether the defendant is nevertheless entitled to judgment as a matter of law.[9]

To aid courts in determining whether a particular fact is genuinely disputed or not, Federal Rule of Civil Procedure 56(c) requires a party asserting that a fact is genuinely disputed to support that assertion with citations to the record.[10]  If such citations are not presented, Federal Rule of Civil Procedure 56(e)(2) authorizes the Court to consider the fact undisputed.[11]  These Federal Rules of Civil Procedure are supplemented by the Eastern District of Arkansas's Local Rule 56.1.  That Local Rule further explains the procedure that parties must use to litigate whether a fact is undisputed or genuinely disputed.  In pertinent part, that Rule reads:

(a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried.

(b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried.

(c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).[12]

---

[6] *See Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.3d 799, 802 (8th Cir. 2019).

[7] *See id.*

[8] *See id.*

[9] *See id.*

[10] Fed. R. Civ. P. 56(c)(1); *see also Erickson*, 31 F.4th at 1048.

[11] Fed. R. Civ. P. 56(e)(2).

[12] Local Rule 56.1.

Here, Officer Fallis filed the statement required under Local Rule 56.1(a).[13]  But Mr. Buckley did not file the statement required under Local Rule 56.1(b).  Nor did Mr. Buckley provide (in his two-page responsive brief) any record citations to dispute Officer Fallis's asserted facts.[14]  In such circumstances, the Court deems admitted (and undisputed) all the facts asserted in Officer Fallis's Statement of Undisputed Material Facts.[15]  The Court is cognizant that Mr. Buckley is proceeding *pro se*.[16]  But there is no *pro se* exception to following Local Rule 56.1.[17]  And Mr. Buckley was specifically made aware of Local Rule 56.1—and the importance of following its directives—by way of a previous ruling in this case.[18]  Bending the rules here because of Mr. Buckley's decision to proceed *pro se* would not be fair to Officer Fallis.

In light of the above, here are the facts for purposes of summary judgment.  On May 20, 2021,[19] Mr. Buckley was pulled over by Officer Fallis for failing to stop at a stop sign, not wearing a seat belt, and driving left of center.[20]  At the time Officer Fallis pulled Mr. Buckley over, Officer

---

[13] Statement of Facts (Doc. 75).

[14] *See generally* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).

[15] *See* Local Rule 56.1(c).

[16] As discussed *supra* note 4, Mr. Buckley never asked this Court to appoint counsel.

[17] *Compare* Local Rule 5.5(e) (exempting *pro se* litigants from certain requirements of that specific Local Rule), *with* Local Rule 56.1 (containing no similar exemption).

[18] *See generally* Order (Doc. 42) (striking Mr. Buckley's Motion for Summary Judgment because it did "not comply with Federal Rule of Civil Procedure 56, Local Rule 56.1, and Local Rule 7.2").  *See also* Br. in Supp. of Def.'s Mot. to Strike (Doc. 32) at 3 (arguing that Mr. Buckley's Motion for Summary Judgment should be stricken for failure to comply with Local Rule 56.1).

[19] Officer Fallis's Statement of Undisputed Material Facts states that the traffic stop occurred on March 20, 2021.  Statement of Facts (Doc. 75) at 1.  But this is undoubtedly a scrivener's error.  The rest of the record clearly indicates that the traffic stop occurred on May 20, 2021.  *See* Ex. 1 (Buckley Dep.) to Statement of Facts (Doc. 75-2) at 2; Ex. 3 (Fallis Decl.) to Statement of Facts (75-3) at 1.

[20] Statement of Facts (Doc. 75) at 1.  As discussed above, these "facts" are deemed admitted because of Mr. Buckley's procedural failures related to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b).  Nonetheless, for completeness, the Court notes that, in Mr. Buckley's Response to the Defendant's Motion for Partial Summary Judgment, Mr. Buckley appears to contend (without record citations) that he had his seat belt on.  *See* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77). Mr. Buckley does not, however, dispute that he was driving left of center or that he ran a stop sign.  The Court understands the phrase "left of center" to mean that Mr. Buckley was drifting from his traffic lane over the street's (real or imagined) center line into the lane reserved for oncoming traffic.  *See* Ex. 3 (Fallis Decl.) to Statement of Facts (Doc. 75-3) at 1; Ex. 2 (Incident Report) to Statement of Facts (Doc 75-2)

Fallis knew Mr. Buckley was a suspect in a shooting that had occurred several days earlier.[21] After an altercation between Officer Fallis and Mr. Buckley, Mr. Buckley was arrested.[22]

Shortly after Mr. Buckley was subdued and arrested, Officer Fallis searched the passenger compartment of Mr. Buckley's truck.[23] Mr. Buckley was still at the scene, but he was being treated by Emergency Medical Services.[24] He did not witness the search.[25] After being treated by EMS, Mr. Buckley was taken to jail.[26] Mr. Buckley did not see the inside of his truck before he left.[27]

Officer Fallis arranged for Mr. Buckley's truck to be towed from the scene by Turner's Towing Service.[28] The next day, Mr. Buckley's father picked up the truck from the towing company lot.[29] Mr. Buckley's father drove the truck back to his house.[30] Apparently, the truck

---

at 2. According to undisputed evidence, Officer Fallis saw this left-of-center driving after he turned on his flashing lights but before Mr. Buckley pulled over. *See* Ex. 2 (Incident Report) to Statement of Facts (Doc 75-2) at 2.

[21] Statement of Facts (Doc. 75) at 1. *See also* Ex. 4 (Probable Cause Aff.) to Statement of Facts (Doc. 75-4) (setting out probable cause that Mr. Buckley had fired a gun at a car with people in it).

[22] *See generally* Ex. 2 (Incident Report) to Statement of Facts (Doc. 75-2); *see also* Statement of Facts (Doc. 75) at 1–2. Eventually, Mr. Buckley was taken to the Lincoln County Jail and booked for aggravated assault, terroristic act, possession of a firearm by certain persons, battery first degree, driving with a suspended license, resisting arrest, fleeing, driving left of center, no seat belt, no proof of insurance, and disregarding a stop sign. *See* Ex. 2 (Incident Report) to Statement of Facts (Doc. 75-2) at 3. Some of these charges stemmed from the shooting days earlier and some stemmed from the traffic stop. In any event, it appears that all of these charges have now been dropped or otherwise dismissed. *See* Order Granting Mot. to Stay (Doc. 43), Mot. to Reopen Case (Doc. 47), Resp. to Mot. to Reopen Case (Doc. 52), *and* Order Granting Mot. to Reopen Case (Doc. 53) (documents associated with the entry and then lifting of a *Younger* stay).

[23] Statement of Facts (Doc. 75) at 2.

[24] *Id.*

[25] *Id.*

[26] *See id.* at 1–2.

[27] *Id.* at 3.

[28] *Id.* at 2. No "hold" was placed on the truck when it was towed. *Id.* at 3. That means the towing company did not have to lock the truck or seek permission from the police department before accessing the truck at the lot. *See id.*

Prior to turning over the truck to the towing company, Officer Fallis performed an inventory search of the truck and created a list of the items that were in the vehicle. *Id.* at 2. But this inventory list is now lost. *See* Ex. 3 (Fallis Decl.) to Statement of Facts (Doc. 75-3) at 1. Officer Fallis lent his inventory book to another officer (Deputy Brandon Posey), and it was never returned. *See id.*

[29] *See* Ex. 1 (Excerpts of Buckley Dep.) to Statement of Facts (Doc 75-1) at 8–9.

[30] *See id.* at 9.

contained legal papers concerning other criminal cases against Mr. Buckley, and Mr. Buckley badly wanted those papers.[31]  Mr. Buckley—in jail at this point—asked his father to get certain folders and papers out of truck and bring them to the jail.[32]  In response, Mr. Buckley's father told him that many of the papers were torn, crumpled, wadded up, and strewn about the car.[33]  Subsequently (it is not clear when), Mr. Buckley's wife went over to Mr. Buckley's father's house and took pictures of the truck.[34]

The pictures taken by Mr. Buckley's wife are in the record at Exhibit 5 to Officer Fallis's Statement of Undisputed Material Facts.  All of them are worth perusing, but here are a few representative ones.



---

[31] *Id.* at 6.

[32] *Id.* at 7.

[33] *Id.*

[34] *Id.  See also* Ex. 5 (Photographs of Truck) to Statement of Facts (Doc. 75-5).

 

The truck was similarly messy with paperwork before Officer Fallis's search of the truck at the scene of the arrest.[35]

When Officer Fallis searched the truck at the scene of the arrest, he was specifically looking for the gun that had allegedly been used in the shooting several days earlier.[36] Officer Fallis looked in the seats, under the seats, in the console, in the glovebox, and in anything that was unlocked and

---

[35] Statement of Facts (Doc. 75) at 2. As discussed above, this "fact" is deemed admitted because of Mr. Buckley's procedural failures related to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b). For completeness, however, the Court notes that, in Mr. Buckley's Response to Defendant's Motion for Partial Summary Judgment, Mr. Buckley argues that his papers were not messy prior to the search. Mr. Buckley speculates that Officer Fallis made a mess of the papers while searching the truck for a gun. See Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).

[36] See Statement of Facts (Doc. 75) at 2.

large enough to hold a gun.[37]  He did not open any envelopes or mail in Mr. Buckley's truck and did not remove anything from the truck.[38]

## II.  DISCUSSION

The Fourth Amendment prohibits unreasonable searches.[39]  This prohibition usually requires police to wait to conduct a search until after they have obtained a warrant to do so.[40]  But usually is not always.[41]  And the Eighth Circuit has made quite clear that the police may (without waiting for a warrant) search the passenger compartment of a vehicle after lawfully arresting the vehicle's driver if "the police have reason to believe that the vehicle contains evidence relevant to the crime of the arrest."[42]

Because Mr. Buckley does not claim his arrest was unlawful, the Court assumes for purposes of this decision that his arrest was lawful.[43]  And because Mr. Buckley does not claim

---

[37] *See id.*

[38] *See id.*  As discussed above, this "fact" is deemed admitted because of Mr. Buckley's procedural failures related to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b).  For completeness, however, the Court notes that Mr. Buckley alleged in his Amended Complaint that Officer Fallis went through Mr. Buckley's legal documents to try and "see what [Mr. Buckley] had going in [his] case."  Am. Compl. (Doc. 7) at 5.  In responding to the Motion for Partial Summary Judgment, Mr. Buckley abandons that allegation, instead speculating that Officer Fallis made a mess of the papers while searching the truck for a gun.  *See* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).

[39] U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

[40] *See New York v. Belton*, 453 U.S. 454, 457 (1981).

[41] *See id.*

[42] *U.S. v. Allen*, 713 F.3d 382, 386–87 (8th Cir. 2013).

[43] The crimes for which Mr. Buckley was arrested included crimes related to the shooting that had allegedly occurred days earlier.  *See supra* note 22.  Although Mr. Buckley does not attack the legality of his arrest, there are some assertions in Mr. Buckley's Response to the Motion for Partial Summary Judgment that suggest he does not believe Officer Fallis had a lawful reason to pull Mr. Buckley over in the first place.  *See* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).  To the extent Mr. Buckley is raising such an argument, the undisputed evidence is that, before Mr. Buckley acquiesced to Officer Fallis's show of force—that is, before Mr. Buckley pulled over in response to Officer Fallis's flashing lights—Mr. Buckley unlawfully ran a stop sign and drove his truck on the left side of a street.  *See supra* page 3 and note 20.  This gave Officer Fallis the legal authority to conduct a traffic stop.  *See* Ark. Code Ann. §§ 27-51-301(a), 27-51-601(d).  Even putting the foregoing aside, the police had probable cause to believe Mr. Buckley had feloniously possessed and discharged a firearm.  *See supra* pages 3–4 and note 21.  Because Mr. Buckley was in public, Officer Fallis had the legal authority to stop his truck to arrest him—even without a

7

that the search, as a general matter, fell outside the line of cases authorizing incident-to-arrest searches of vehicles, the Court assumes for the purposes of this decision that Officer Fallis had the lawful authority to conduct a search of the passenger compartment of Mr. Buckley's truck to look for a gun.

Mr. Buckley's Fourth Amendment challenge appears to be exclusively focused on the way the search was conducted. Specifically, Mr. Buckley asserts that, while searching the truck for a gun, Officer Fallis made a total mess of legal papers that Mr. Buckley had in the truck.[44] In the Eighth Circuit, "[i]t is well settled that the Fourth Amendment protects against unreasonable or unnecessarily destructive searches and seizures."[45] The way an otherwise lawful search is conducted "is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness."[46] "The 'when' and 'how' of otherwise legitimate law enforcement actions may always render such actions unreasonable."[47]

Mr. Buckley's unconstitutional-search claim has both an evidentiary flaw and a legal flaw that cannot be overcome at this stage of the proceedings. First, because of his procedural failures related to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(b), it has been deemed admitted that Mr. Buckley's papers were a mess and strewn throughout the truck before the search

---

warrant. *Cf. United States v. Watson*, 423 U.S. 411, 416–24 (1976) (holding that postal officers constitutionally effected a warrantless arrest when there was probable cause to suspect that defendant committed a felony and the defendant was in public). *See also Chambers v. Maroney*, 399 U.S. 42, 43–47 (1975) (holding it was constitutional for an officer to stop a vehicle and arrest its occupants without a warrant when the officer had probable cause to suspect that the occupants had recently committed a felony).

[44] *See* Am. Compl. (Doc. 7) at 4–5.

[45] *Cook v. Gibbons*, 308 F. App'x. 24, 28 (8th Cir. 2009) (unpublished) (per curiam) (citing *Ginter v. Stallcup*, 869 F.2d 384, 388 (8th Cir. 1989)).

[46] *Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994) (citing, inter alia, *Dalia v. United States*, 441 U.S. 238, 257–58 (1979) and *Zurcher v. Stanford Daily*, 436 U.S. 547, 559–60 (1978)).

[47] *Id.* (citing *Zurcher*, 436 U.S. at 559–60 and *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)).

occurred.[48]  That means Officer Fallis did not—more than negligibly—move around the papers during his search for a gun.  Under these circumstances, no reasonable jury could conclude that Officer Fallis conducted the search in an unreasonable or unnecessarily destructive manner.

Second, even putting aside the consequences of Mr. Buckley's procedural errors, and even assuming that it was Officer Fallis's search that caused Mr. Buckley's papers to be in the state seen in the photographs taken by Mr. Buckley's wife,[49] Officer Fallis is entitled to qualified immunity. In personal-capacity § 1983 cases like this one, a defendant gets qualified immunity when the constitutional duty he is purported to have transgressed was not clearly established at the time of his conduct.[50]  The point of the qualified immunity doctrine is to confine liability to only those government officials who intentionally violate the Constitution or are so grossly incompetent that they fail to follow clear constitutional dictates.[51]  A constitutional rule is clearly established in the Eighth Circuit if there is—at the time of the purportedly bad act—on-point Supreme Court precedent, on-point Eighth Circuit precedent, or a consensus of on-point precedent from other

---

[48] *See supra* page 6 and note 35.

[49] The only evidence in the record to which Mr. Buckley could possibly point in support of his claim are the photographs of the inside of the truck taken by his wife.  We do not know how many days after the search these photographs were taken.  But we do know some things that (undisputedly) happened between the search and when these photographs were taken: a private towing company towed the truck to its lot, the truck sat in the lot overnight, Mr. Buckley's father drove the truck from the lot back to his house, and the truck sat at Mr. Buckley's father's house for some unspecified period of time before Mr. Buckley's wife came over to take pictures.  *See* Statement of Facts (Doc. 75) at 2–3; Ex. 1 (Excerpts of Buckley Dep.) to Statement of Facts (Doc 75-1) at 8–9.  One might therefore conclude that it is sheer speculation to assume that the search (as opposed to a later event) caused the mess of papers seen in the photographs.  For example, it is hard to imagine that Mr. Buckley's father could have driven the truck to his house while there were open papers on the driver's seat, attached to the steering wheel, and surrounding the foot pedals.  Either those papers ended up in those positions after Mr. Buckley's father drove the truck or Mr. Buckley's father had to have interacted with the papers while he drove.  In addition, the Court has some concern about the photographs themselves.  A quick comparison of the photographs shows that the layout of the papers on the passenger seat and on the middle console changes between photos.  *See* Ex. 5 (Photographs of Truck) to Statement of Facts (Doc. 75-5).

[50] *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[51] *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

circuits that identifies the rule and makes clear it applies to the situation at hand.[52] The fit between the precedent and the circumstances in the case at bar does not need to be perfect.[53] But it needs to be close enough that all but the most incompetent officials would be on notice that the rule applies to the conduct in which they purportedly engaged.[54] This analysis cannot take place at too high a level of generality, but it need not take place at the finest level of granularity.[55]

The Fourth Amendment rule that a police officer may not perform a search in an unreasonable or unnecessarily destructive manner was clearly established at the time of Officer Fallis's search.[56] But, on its own, that is not enough. That rule operates at too high a level of generality to alone create liability here. Instead, what we are looking for is either binding precedent or a consensus of non-binding cases that would inform all but the most incompetent officers that the messing up, crumpling up, and strewing about of a stack of papers—it doesn't look like much more than a dozen sheets of paper, none of which looks destroyed—is unreasonable or unnecessarily destructive. Mr. Buckley has not provided any such cases to the Court, which is not surprising because Mr. Buckley has provided no cases at all to the Court.[57] The Court has not found such cases on its own.[58]

Assuming the state of the papers was caused by Officer Fallis's search for the gun, it certainly wasn't nice for him to have treated the papers in the manner he did. It probably wasn't

---

[52] *Hanson as Tr. for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019).

[53] *See District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018).

[54] *See id.* ("Existing precedent must place the lawfulness of the particular [conduct] 'beyond debate.'" (quoting *Ashcroft*, 563 U.S. at 741)).

[55] *See id.*

[56] *See Ginter*, 869 F.2d at 388.

[57] *See generally* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).

[58] Although it is true that the Eighth Circuit has clearly established that "any destruction caused by law enforcement officers" during a search "must be necessary to effectively execute" the search, nothing was destroyed in the case at bar. *Ginter*, 869 F.2d at 388.

circuits that identifies the rule and makes clear it applies to the situation at hand.[52] The fit between the precedent and the circumstances in the case at bar does not need to be perfect.[53] But it needs to be close enough that all but the most incompetent officials would be on notice that the rule applies to the conduct in which they purportedly engaged.[54] This analysis cannot take place at too high a level of generality, but it need not take place at the finest level of granularity.[55]

The Fourth Amendment rule that a police officer may not perform a search in an unreasonable or unnecessarily destructive manner was clearly established at the time of Officer Fallis's search.[56] But, on its own, that is not enough. That rule operates at too high a level of generality to alone create liability here. Instead, what we are looking for is either binding precedent or a consensus of non-binding cases that would inform all but the most incompetent officers that the messing up, crumpling up, and strewing about of a stack of papers—it doesn't look like much more than a dozen sheets of paper, none of which looks destroyed—is unreasonable or unnecessarily destructive. Mr. Buckley has not provided any such cases to the Court, which is not surprising because Mr. Buckley has provided no cases at all to the Court.[57] The Court has not found such cases on its own.[58]

Assuming the state of the papers was caused by Officer Fallis's search for the gun, it certainly wasn't nice for him to have treated the papers in the manner he did. It probably wasn't

---

[52] *Hanson as Tr. for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019).

[53] *See District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018).

[54] *See id.* ("Existing precedent must place the lawfulness of the particular [conduct] 'beyond debate.'" (quoting *Ashcroft*, 563 U.S. at 741)).

[55] *See id.*

[56] *See Ginter*, 869 F.2d at 388.

[57] *See generally* Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. (Doc. 77).

[58] Although it is true that the Eighth Circuit has clearly established that "any destruction caused by law enforcement officers" during a search "must be necessary to effectively execute" the search, nothing was destroyed in the case at bar. *Ginter*, 869 F.2d at 388.

good police policy, either. But Officer Fallis was conducting a search incident to an arrest on the side of the road at an active arrest scene. In such circumstances, prior cases do not make it obvious to all but the most incompetent officers that pushing papers aside (such that they end up as photographed in Doc. 75-5) to try to find a gun is unreasonable, unnecessarily destructive, or otherwise extreme.[59]

On these facts, and regardless of which party bears the preponderance-of-evidence burden of proof, Officer Fallis is entitled to summary judgment on the unconstitutional search claim. At the appropriate time, judgment on this claim will be entered in favor of Officer Fallis.

IT IS SO ORDERED this 16th day of August 2024.[60]

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[59] *Compare Strope*, 25 F.3d at 648–652, *with* the facts described *supra* on pages 3–7.

[60] The Clerk's Office is directed to change Defendant's name to Johnathan Fallis, Deputy, Star City Police Department.